CARLON COMPANY, Appellant,

v.

BOARD OF REVIEW OF CITY OF
CLINTON, Iowa, Appellee.

No. 96–1416.

Supreme Court of Iowa.

Nov. 26, 1997.

LAVORATO, Justice.

The law provides a special formula for determining the tax assessment value of manufacturing machinery and computers. Under this formula, the assessor must value such property at the lesser of 30% of net acquisition cost or fair market value. The taxpayer's appraiser made three calculations regarding the taxpayer's manufacturing machinery and computers. In the first calculation, the appraiser valued each item of the property at 30% of net acquisition cost and added all those amounts together, arriving at $3,948,446. The assessor accepted this amount as the tax assessment value of the property as of January 1, 1995.

In the second calculation, the appraiser valued each item of the property at fair market value and added those amounts together, arriving at $3,472,084. Because this was less than 30% of net acquisition cost for *all* these items, the district court accepted the $3,472,084 figure as the tax assessment value of the property as of January 1, 1995.

In the third calculation, the appraiser added together the *lesser* of 30% of net acquisition cost and fair market value for *each* item of the property, arriving at $2,352,345. The taxpayer contends in its appeal, as it did in the district court, that this amount is the correct tax assessment value of its manufacturing machinery and computers as of January 1, 1995. We agree. We reverse and remand for an order establishing the tax assessment value of the taxpayer's property at $2,352,345 as of January 1, 1995.

I. *Background Facts and Proceedings.*

Carlon Company is in the plastics business and owns property in Clinton, Iowa. The company manufactures pipe, such as conduit, conduit fittings, flexible conduit, electrical boxes, and control boxes.

Carlon's property consists of land, improvements, and leased property. None of this property is part of the dispute before us. Its property also consists of manufacturing machinery and computers which are the subject of the dispute.

Mark R. Schuling of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellant.

Gary J. Rolfes of Mayer, Mayer, Lonergan & Rolfes, Clinton, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

In April 1995 the Clinton city assessor valued Carlon's property as of January 1, 1995, for tax assessment purposes. The combined assessed value of the property was $5,854,355. Of this amount, the assessor determined Carlon's manufacturing machinery and computers had a tax assessment value of $3,948,446. The assessor arrived at this last figure by taking 30% of the net acquisition cost of Carlon's manufacturing machinery and computers (hereinafter "property"). Although the assessor agreed the law required him to assess the property at the lesser of 30% of net acquisition cost *or* market value, the assessor restricted his valuation to 30% of net acquisition cost.

Carlon filed a timely protest with the city of Clinton Board of Review. *See* Iowa Code § 441.37 (1995). The board affirmed the assessment.

Carlon then appealed the board's decision to the district court. *See* Iowa Code § 441.38(1). At trial, two appraisers testifying on behalf of Carlon agreed that the lesser of 30% of net acquisition cost or fair market value of the property was $2,352,345. This figure was arrived at by valuing each item of the property at 30% of its net acquisition cost and at fair market value, then adding together the lesser of those amounts. The appraisers also agreed that the total fair market value of the property was $3,472,084. In short, the appraisers added together the fair market value for each item of property. We take two items from one appraiser's written report as an example of the process used:

| Equipment Description | Year | Cost | 30% Value | [Fair] Market Value | [Tax] Assessment [Value] |
|---|---|---|---|---|---|
| Press | 1986 | $622.00 | $187.00 | $120.00 | $120.00 |
| Hydraulic | 1986 | $247.00 | $ 74.00 | $480.00 | $ 74.00 |
| **Totals** | | $869.00 | $261.00 | $600.00 | $194.00 |

The district court determined the tax assessment value for the property should be $3,472,084. This is the figure Carlon's appraisers arrived at by adding together the fair market value of each piece of property and is less than 30% of net acquisition cost of all the property. As mentioned, 30% of net acquisition cost of all the property is $3,948,-446.

On appeal, Carlon contends the district court erred by not following the process (described above) its appraisers used in arriving at their $2,352,345 valuation figure. More specifically, Carlon thinks the court erred in simply adding together the fair market value for each piece of property in determining the lesser of 30% of net acquisition cost or fair market value. Carlon asks that we establish the tax assessment value of the property as of January 1, 1995 at $2,352,345.

II. *Scope of Review.*

We review tax assessments de novo. *Post–Newsweek Cable, Inc. v. Board of Review,* 497 N.W.2d 810, 812 (Iowa 1993); *see* Iowa Code § 441.39; Iowa R.App. P. 4.

We give the district court's fact-findings consideration—especially as to witness credibility—but will not be bound by them. *Post–Newsweek,* 497 N.W.2d at 813; Iowa R.App. P. 14(f)(7). We decide the ultimate issues involved. *Post–Newsweek,* 497 N.W.2d at 813. In doing so, we follow the statutory rule that "there shall be no presumption as to the correctness of the valuation of assessment appealed from." Iowa Code § 441.39.

III. *Determination of the Correct Valuation for Tax Assessment Purposes.*

If the record is sufficient for us to do so, our duty is to determine the actual value of the property for tax assessment purposes. *Cablevision Assocs. VI v. Board of Review,* 424 N.W.2d 212, 213 (Iowa 1988). We conclude the record is sufficient. For reasons that follow, the actual value of the property for tax assessment purposes is, as Carlon suggests, $2,352,345 as of January 1, 1995.

A. *Applicable Law.*

1. *Actual value.* According to Iowa Code section 441.21(1)(*a* ),

[a]ll property subject to taxation shall be valued at its actual value which shall be entered opposite each item, and, except as otherwise provided in this section, shall be assessed at one hundred percent of its actual value, and the value so assessed shall be taken and considered as the assessed value and taxable value of the property upon which the levy shall be made.

"Actual value" as used in section 441.21(1)(*a*) "shall be the fair and reasonable market value" of all property subject to assessment and taxation, "except as provided in" section 441.21(1). "Market value" is

the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property.

Iowa Code § 441.21(1)(*b*).

Notwithstanding any other provision in section 441.21(1), "the actual value of any property shall not exceed its fair and reasonable market value." *Id.* § 441.21(1)(*g*).

2. *Actual value for machinery and computers.* Iowa Code section 427A.1(1), subsections (*e*) and (*j*), require tax assessors to assess and tax manufacturing machinery and computers as real property. The Code further requires special valuation of such property:

427B.17. **Property subject to special valuation.**

For property defined in section 427A.1, subsection 1, paragraphs "*e*" [manufacturing machinery] and "*j*" [computers], acquired or initially leased on or after January 1, 1982, the taxpayer's valuation shall be limited to thirty percent of the net acquisition cost of the property ... "[N]et acquisition cost" means the acquired cost of the property including all foundations and installation cost less any excess cost adjustment.

*Id.* § 427B.17.

The Iowa Department of Revenue and Finance has promulgated the following regulations to govern assessment of manufacturing machinery and computers:

Computers and industrial machinery and equipment acquired after December 31, 1981, but prior to January 1, 1994, are to be assessed at 30 percent of the property's net acquisition cost through the 1998 assessment year ....

Iowa Admin. Code r. 701–80.7(1)(1996).

In the event the actual depreciated fair market value of property assessed pursuant to Iowa Code section 427B.17 is less than the percent of the net acquisition cost of the property as provided in Iowa Code section 427B.17, the taxpayer's assessed value would be equal to actual depreciated fair market value of the property.

*Id.* r. 701–80.7(6).

In sum, the assessor shall assess and tax manufacturing machinery and computers as real property but under a special valuation formula. The assessor must assess and tax such property at the lower of 30% of net acquisition cost or fair market value.

3. *Methods of determining fair market value.* In arriving at a property's fair market value, an assessor must take into account the "[s]ale prices of the property or comparable property in normal transactions reflecting market value[ ] and the probable availability or unavailability of persons interested in purchasing the property . . . ." Iowa Code § 441.21(1)(*b*).

If the assessor cannot determine fair market value by using the sale prices of the property or comparable property, the assessor

may determine the value of the property using the other uniform and recognized appraisal methods including its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor.

*Id.* § 441.21(2).

Thus these provisions mandate that the assessor must first attempt to determine fair market value by using comparable sales.

Failing this, the assessor may then resort to the "other factors" approach outlined in section 441.21(2). *Bartlett & Co. Grain v. Board of Review*, 253 N.W.2d 86, 88–89 (Iowa 1977). In a tax assessment appeal, the party relying on the "other factors" approach has the burden of persuading the fact finder that the fair market value of the property cannot be readily established by the comparable sales approach. *Id.* at 89.

■ To be comparable, sales need not necessarily be within the assessor's geographical area. *Id.* at 91–94 (holding that several sales of grain elevators (some within the state and some outside the state) were comparable in determining fair market value of grain elevator in Sioux City).

4. *Procedure in the district court.* On appeal to the district court, a taxpayer challenging a tax assessment value confirmed by the board of review does so in a two-stage process. In the first stage, the taxpayer must show that the board's valuation is excessive, inadequate, inequitable or capricious. In the second stage, the taxpayer must establish what the correct tax assessment value should be. *Heritage Cablevision v. Board of Review*, 457 N.W.2d 594, 598 (Iowa 1990).

The taxpayer has the burden to show that the board's valuation is excessive, inadequate, inequitable or capricious. Iowa Code § 441.21(3). Where, however, the taxpayer

> offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed.

*Id.*

■ The burden of proof referred to in section 441.21(3) is one of persuasion. *Post–Newsweek*, 497 N.W.2d at 813. If the taxpayer fails to shift the burden of proof, the taxpayer must prove by a preponderance of the evidence that the challenged valuation is excessive, inadequate, inequitable, or capricious. *Id.*

Although section 441.21(3) does not define "disinterested witness," we have defined the terms to mean "[o]ne who has no right, claim, title, or legal share in the cause or matter in issue, and who is lawfully competent to testify." *Id.*

B. *The merits.*

■ 1. *Stage one: proving the tax assessment value is excessive.* John Stuart Moreland, the Clinton city assessor, testified in Carlon's case in chief. Moreland has been the city assessor since January 1, 1982. He agreed that the correct tax assessment value of Carlon's property would be the lesser of 30% of net acquisition cost or fair market value. Moreland, however, did not attempt to arrive at a fair market valuation of such property. Rather, he simply set the tax assessment value at 30% of net acquisition cost based on figures Carlon provided.

Moreland did not use the market value approach in valuing Carlon's property because, according to him, there was no market for similar property in Clinton. Moreland conceded he made no attempt to determine if there was a market for similar property outside of Clinton. Moreland did not personally inspect Carlon's property in 1995. Nor could he recall the last time he saw the property.

Bill Hauser and Leslie Miles, Jr. testified on behalf of Carlon. Hauser is in the business of buying and selling used equipment in the plastics and chemical industries. He explained his work this way:

Q. And when you refer to used equipment and asset valuations, can you explain to me exactly what that would entail? A. We buy and sell used equipment in the plastics industry and chemical industry, we buy moveable items, we buy high-tech electric equipment, and obviously we sell all these things, and from time to time, we are asked to do asset valuations where we would go in and inspect the equipment and do a fair market value by researching the market and determining the value from sales histories.

Q. Now, you refer to plastic[s] industry. What is the plastic[s] industry? A. The plastic[s] industry is actually broken down from resin manufacturers, which come from the petrochemical industry, through the finishing of plastics. Carlon

would be in the finishing of plastics sector of the plastic[s] industry.

Q. Is that sector of the industry a large sector? A. Yes, it's—actually entails more actual factories or units in the finishing end. There are very few resin manufacturers that produce large volumes of resin. That resin is fed to the finishing industry which is worldwide, nationwide and many, many, many, finishing units.

Hauser has worked in the plastics industry since the early sixties. Since that time he has worked for equipment dealers in the plastics industry, selling and performing asset valuations of plastics equipment. He has also worked as an engineer in a plastics company that—like Carlon—was a finisher. He belongs to the Society of Plastics Engineers.

Hauser testified he was familiar with Carlon's property which is similar to the type he has worked with in the past, sold, and valued. According to Hauser, Carlon has two types of property. One type is very common, is used throughout the plastics industry, and constitutes the majority of Carlon's property. The other type is custom-built specially for Carlon.

When asked to define market value, Hauser replied it is "the most probable price that would be paid between a knowledgeable buyer and a seller for the equipment being up for sale at an arms-length transaction." When he was asked to come up with a market value of Carlon's property, Hauser went to the premises, received a list of the property, and inspected and photographed each item. He also took detailed field notes of the property, regarding condition, age, and functionality. Through his visual inspection, Hauser determined the majority of the property had been very well maintained, something directly affecting the sales price.

Armed with this information, Hauser made a market study of property having similar quality, age, and functionality. He searched publications, advertisements, and sought quotations of similar property from other dealers. He studied his own sales records and photographs of similar property that had sold in the past. Using all of this information and his own experience, Hauser determined the fair market value of Carlon's property. Because one could sell Carlon's property readily on the open market, Hauser was confident he had sufficient comparable sales to arrive at a fair market value for this property.

Hauser prepared a report, reflecting the fair market value of Carlon's property as of January 1, 1995. The first part of the report is a list of the property that Hauser had inspected with a description of each piece, year of purchase, and the cost as reported to him. Hauser broke the list down into equipment, molds, forklifts, and computers. The years of purchase begin with 1986 and end with 1994. According to the report, 'the equipment, molds, and forklifts are taxable pursuant to Iowa Code section 427A.1(1)(e ). The computers are also taxable but pursuant to Iowa Code section 427A.1(1)(j ).

Hauser valued the computers separately at a fair market value of $36,390 based on published sales data in a widely accepted computer price guide. The balance of the property—other than molds—he valued at $3,435,693. This amount includes a contributions factor of 20% to the overall property value to account for installation and other nonrecoupable intangible costs. *See* Iowa Code § 427B.17 (defining net acquisition cost to include installation). Hauser explained that there is an intrinsic value of the property installed and running as opposed to sitting on a dock.

Hauser recognized the molds are proprietary, meaning Carlon builds them for itself. No one else may build the same mold. For that reason, the molds have a limited appeal to other users and are therefore valueless. However if the molds are sold as part of a going concern, they do have a minimal value because the purchaser may wish to introduce some of the product designs to its established line. According to Hauser, the market value of molds sold as part of a going concern would range between 5% to 20% of the molds' original cost. For the purpose of his valuation, Hauser added 15% of the molds' original cost to his fair market valuation.

Taking into consideration these adjustments, Hauser arrived at a fair market value

for Carlon's entire property of $3,472,084 as of January 1, 1995.

Hauser labeled the last part of his report "Assessed Value Rendition." Here Hauser valued each item of Carlon's property at 30% of its net acquisition cost and at fair market value. He then added together the lesser value of each property item. The resulting figure, $2,352,345, was Hauser's tax assessment value of the property as of January 1, 1995. Earlier, we set out two items from this portion of the report as an example of the process Hauser used.

Leslie Miles, Jr., has—like Hauser—extensive experience in valuing property similar to Carlon's. He also belongs to a number of professional appraisal organizations and has taught seminars and courses relevant to the type of valuation in question. He has written on the subject of machinery and equipment valuation. He also has taught government appraisers and is a member of the International Association of Assessing Officers. His particular area of expertise is industrial machinery, equipment, and real estate. He has valued industrial equipment for over thirty years. His definition of fair market value parallels Hauser's.

Carlon engaged Miles to review Hauser's appraisal study. For that purpose Miles visited Carlon's plant and inspected much of Carlon's property. Miles reviewed Hauser's report and independently checked some items for comparables. Based on his review, Miles testified that Hauser's fair market valuation was reasonable.

The board contends that Carlon did not produce "evidence by at least two disinterested witnesses" that its valuation was excessive, sufficient to shift the burden of persuasion to the board. Iowa Code § 441.21(3). In support of its contention, the board argues Miles merely approved Hauser's appraisal as reasonable. For this reason, the board claims that Miles should not qualify as an additional competent witness.

The district court noted that Carlon had hired "two appraisers." The court, however, did not expressly conclude that Carlon's two appraisers were competent and disinterested, sufficient to shift the burden of persuasion to the board. We need not decide this issue because we find Carlon's evidence sufficiently established the city's valuation was excessive.

The evidence shows that Carlon has two types of property. One is common and used throughout the industry. The majority of Carlon's property is of this type. Testimony from Hauser and Miles convincingly shows that there was a ready market for this type of property. As to this property, the assessor was not limited to comparable sales in the city of Clinton. *See Bartlett,* 253 N.W.2d at 93. The assessor could have used the same information Hauser used to determine fair market value of this property. In fact, the evidence shows that Carlon made Hauser's report available to the assessor before the assessment.

The second type of property is custom built and commonly referred to as the "molds." We could easily assume from the evidence that the molds have little, if any, value. Yet Hauser valued the molds at 15% of their original cost. This was reasonable in light of testimony from both Hauser and Miles that the market value of molds sold as part of a going concern would range between 5% to 20%.

As for Carlon's computers, Hauser used comparable sales data from a widely accepted computer price guide to arrive at a fair market value of $36,390. Miles testified this approach and value were reasonable. We agree and accept that figure.

Both Hauser and Miles agreed that the fair market value of Carlon's total property was $3,472,084 as of January 1, 1995. We accept this figure as the total fair market value. This, of course, was less than the city's valuation of $3,948,446, which represents 30% of the net acquisition cost of the property. If we stopped here, one can readily see that the city's valuation for assessment was excessive. Carlon, however, thinks the tax assessment value should be still less, $2,352,345. We thus arrive at the final issue in this case.

■ *2. Stage two: establishing the correct tax assessment value.* The law provides that manufacturing machinery and computers are assessed as real property but

under a special formula. *See* Iowa Code §§ 427A.1(1)(*e* ) and (*j* ), 427B.17; Iowa Admin. Code r. 701–80.7(6). The formula calls for such property to be taxed at the *lower* of 30% of net acquisition cost or fair market value. Hauser determined that under this formula the tax assessment value of the property in question is $2,352,345 as of January 1, 1995. Miles thought this valuation was reasonable.

Hauser arrived at the $2,352,345 figure by valuing *each* item of the property at 30% of the item's net acquisition cost and at market value. He then added together the lesser of those amounts.

The district court disagreed with valuing the property on a per item basis, noting that

> [t]he Court does not find any … legal requirement that each item be individually valued, as did the appraiser for the plaintiff, and the Court finds that the fair market value of the property is less than 30 percent of the depreciated acquisition cost and is the method to have been used by the city assessor. The Court assesses the property in dispute at the figure established by the appraisers hired by the plaintiff in the total sum of $3,472,084 and that is the assessment to be applied to the property in dispute as of January 1, 1995.

Thus the district court accepted Hauser's fair market valuation of the property arrived at by adding together the fair market values of *all* the items and used that figure as the proper tax assessment value as of January 1, 1995. The court, however, rejected Hauser's approach of valuing each item at 30% of the item's net acquisition cost and at fair market value and then adding together the lesser of those amounts to arrive at the valuation for assessment purposes.

Our cases inferentially support Hauser's per item valuation approach.

*Tiffany v. County Board of Review,* 188 N.W.2d 343 (Iowa 1971), stands for the proposition that land and buildings must be valued together, as a unit, to determine fair market value for purposes of real property taxes. *Tiffany,* 188 N.W.2d at 349. Later in the decision, though, this court considered the value of three pieces of farm equipment.

*Id.* at 350. Although unclear, it appears the court found the value of the farming equipment on a per unit basis; otherwise, the court could have been satisfied stating the total value of the three pieces of equipment.

In *Post–Newsweek,* the taxpayer sought to value his property on a cost "per component" basis. 497 N.W.2d at 815. The taxing authority wished to use an income-based approach because it emphasized the entire property's value as a "going concern." *Id.* We accepted the taxpayer's position, but probably more because the income-based approach included intangible factors statutorily disallowed in the consideration. *Id.* at 816.

In *Rose Acre Farms, Inc. v. Board of Review,* 479 N.W.2d 260, 262 (Iowa 1991), we considered the assessed value of certain machinery in an egg-producing plant. *See* Iowa Code § 427A.1(3) (property is not "attached" and therefore not taxed as real property if "it is a kind of property which would ordinarily be removed when the owner of the property moves to another location"). Because the issue concerned whether any individual item was "attached" to the realty, we necessarily had to consider each piece of machinery individually. It is not surprising then, we rejected the taxing authority's "going concern" approach, which had the effect of inflating the property's value.

Finally, in *Heritage Cablevision,* we considered an assessment using an income approach of capitalized value of *all* assets, reduced by the value of taxable assets as established by a cost-less-depreciation method. 457 N.W.2d at 598–99. We rejected the approach. The main reason for this rejection lay in the statutory command against lumping goodwill, value of the business, and special value to the owner in property value assessments. *Id.* at 599. The more basic message of the decision appeared to be that an assessor must separately value assets before determining the assessment.

There are several arguments in support of "aggregation." Manufacturing equipment and computers must statutorily be assessed and taxed as real property. *See* Iowa Code § 427A.1(1)(*e* ) and (*j* ). As mentioned, the rule in *Tiffany* says improvements to real

property are not valued separately, but with the entire parcel. Additionally, Iowa Code section 441.21(2) clearly states that inventory or goods in bulk are to be valued in the aggregate. One might ask why depart from this approach for manufacturing machinery and computers? Finally, aggregation would increase the amount of money flowing to the taxing entity.

Despite these arguments for "aggregation," we conclude stronger authority supports the view that machinery and computers should be valued on an item, or per component, basis. We begin with the rules of statutory construction. The polestar of statutory construction is, of course, legislative intent. *Harris v. Olson,* 558 N.W.2d 408, 410 (Iowa 1997). Only when a statute is ambiguous may a court resort to the rules of statutory construction. *In re G.J.A.,* 547 N.W.2d 3, 6 (Iowa 1996). A statute is ambiguous "if reasonable minds may differ or be uncertain as to the meaning of the statute." *Id.* (citation omitted). Because it is not clear whether the legislature intended aggregate or per unit assessment, we apply the rules of statutory construction.

One rule of statutory construction requires us to consider all parts of the enactment. *State ex rel. Iowa Dep't of Transp. v. General Elec. Credit Corp.,* 448 N.W.2d 335, 341 (Iowa 1989). We therefore think it is appropriate to look to other statutory provisions for guidance as to the unit of analysis. Looking to language in Iowa Code sections 441.18, 441.19(6), and 441.21(1)(*a*), we think it is clear the assessment is intended to be made on an individual item basis. *See* Iowa Code §§ 441.18 ("Each assessor shall ... enter upon the assessment rolls the *several items of property* required to be entered for assessment. The assessor shall personally affix *values* to all property assessed by the assessor.") (emphasis added); § 441.19(6) (providing that "[o]n or before February 15 of each year, each owner of industrial real estate shall submit to the local assessor a report listing, *by year of acquisition and by acquisition cost the owner's machinery* as described in section 427A.1, subsection 1, paragraph '*e*', and *specifying any machinery added or removed* during the preceding year

....") (emphasis added); § 441.21(1)(*a*) (providing that "[a]ll property subject to taxation shall be valued at its actual value which shall be entered opposite *each item,* and except as otherwise provided in this section, shall be assessed at one hundred percent of *its* actual value ....") (emphasis added).

Another rule of statutory construction applies to statutes that impose taxes. Such statutes are liberally construed in favor of the taxpayer and strictly against the taxing body. It must appear from the language of the statute that the tax assessed against the taxpayer was clearly intended. *State ex rel. Dep't of Transp.,* 448 N.W.2d at 341. Thus, any doubt in interpretation or construction should be resolved in the taxpayer's favor. *Id.; accord Rose Acre,* 479 N.W.2d at 263.

A further rule of statutory construction requires us to look to the object to be accomplished and the evils and mischiefs to be remedied. We must provide a reasonable or liberal construction that will best effect the statute's purpose rather than one that will defeat it. *State ex rel. Dep't of Transp.,* 448 N.W.2d at 341. Thus, we think it is important to look to the object the legislature meant to secure when it enacted section 427B.17.

Obviously, sections 427B.17 and 441.21(1)(*g*) and the regulations promulgated pursuant to them are designed to *reduce* a manufacturer's tax burden. But how much of a reduction is an open question. The Iowa Department of Revenue appropriately considers sections 427B.17 and 441.21(1)(*g*) to mean as much of a reduction as possible; hence regulation 701–80.7(6) provides for assessment at the *lower* of market value or 30% net acquisition cost. *Compare* Iowa Code § 427B.17 ("taxpayer's valuation shall be limited to thirty percent of the net acquisition cost") *with* § 441.21(1)(*g*) (actual value assessment shall not exceed fair market value). Regulation 701–80.7(6), like section 427B.17, is designed to protect the owner of rapidly depreciating equipment.

Computers are a good example of such rapidly depreciating equipment. In this case, a computer Carlon purchased in 1986

for $4,558 had a market value in 1995 of $25. Taking section 441.21(1)($g$) and regulation 701–80.7(6) seriously requires assessment at market value ($25) instead of 30% net acquisition cost ($1,367.40). Allowing aggregation as the board suggests would defeat this taxpayer protection.

A look at the difference between valuation on an aggregation basis versus a per unit basis in this case graphically demonstrates that an aggregation basis valuation costs the taxpayer substantially more. On an aggregation basis, the valuation is what the district court arrived at: $3,472,084. On a per unit basis, the valuation is what Carlon suggests: $2,352,345. The valuation on an aggregation basis is $1,119,739 more than the valuation on a per unit basis.

At the heart of section 427B.17, section 441.21($g$), and regulation 701–80.7(6) is an aim to promote economic development in the state of Iowa. This is obvious in the legislative scheme to keep taxes on manufacturing machinery and computers at a minimum and ultimately to exempt such property from tax. *See* Iowa Code § 427B.17(3) (1997) (requiring that manufacturing machinery and computers shall be assessed at (1) 22% of net acquisition cost for 1999, (2) 14% of net acquisition cost for the year 2000, (3) 6% of net acquisition cost for the year 2001, (4) 0% of net acquisition cost for the year 2002 and succeeding assessment years). By doing this, the legislature hopes to retain manufacturing companies presently in Iowa and to entice non-domestic companies to locate here. The ultimate aim, of course, is to keep and create jobs which in turn should help our state economy grow. Valuation of manufacturing machinery and computers on an aggregate basis is clearly at odds with this legislative goal.

In short, the legislature intended to tax manufacturing machinery and computers at the lowest possible value. Aggregation, however, is clearly not the means to do so.

We interpret section 427B.17, section 441.21(1)($g$), and regulation 701–80.7(6) as requiring the assessor to (1) value *each* item of machinery and computers at 30% of net acquisition cost and fair market value and (2) add together the lesser of each amount to arrive at a valuation for tax assessment purposes. In using this approach, Carlon's appraisers agree that the tax assessment value of Carlon's property as of January 1, 1995, is $2,352,345. We find from the evidence that $2,352,345 is the tax assessment value for Carlon's property as of January 1, 1995.

IV. *Disposition.*

Because our determination of tax assessment value is different from that reached by the district court, we reverse. We remand for an order establishing the tax assessment value of the property at $2,352,345 as of January 1, 1995.

**REVERSED AND REMANDED WITH DIRECTIONS.**