# IN THE COURT OF APPEALS OF IOWA

No. 20-1290
Filed February 16, 2022


**NATIONWIDE MUTUAL INSURANCE COMPANY,**
　　Plaintiff-Appellant,

**vs.**

**POLK COUNTY BOARD OF REVIEW,**
　　Defendant-Appellee.
_____

　　Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.


　　Plaintiff appeals the assessment for tax purposes of its property by the Polk County Board of Review. **REVERSED.**


　　Sean Moore of Brown, Winick, Graves, Gross and Baskerville, P.L.C., Des Moines, for appellant.

　　Mark Taylor and Jason Wittgraf, Assistant Polk County Attorneys, Des Moines, for appellee.


　　Heard by Schumacher, P.J., Ahlers, J., and Mullins, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**SCHUMACHER, Presiding Judge.**

In this appeal, we are called upon to determine whether the valuation of two structures located in downtown Des Moines comports with Iowa Code section 441.21 (2017) and the supreme court's decision in *Wellmark, Inc. v. Polk County Board of Review*, 875 N.W.2d 667 (Iowa 2016).

Nationwide Mutual Insurance Co. (Nationwide) appeals the assessment for tax purposes of its property by the Polk County Board of Review (Board). The district court affirmed the Board's valuation. Nationwide presented evidence from two disinterested witnesses to support its claim that the actual value of the property was less than the assessed value, and the burden then shifted to the Board to uphold the assessment. The Board's experts did not rely on the sales approach to value the property. The district court did not address whether the fair market value of the property could be readily established by looking at comparable sales. Nationwide entered into a minimum assessment agreement that established the minimum actual value of the property and we determine this amount is the tax assessment value for the property. We reverse the decision of the district court.

I.      **Background Facts & Proceedings**

Nationwide owns buildings at 1100 Locust Street and 1200 Locust Street in Des Moines. These buildings are used as the company's headquarters. In 2006, Nationwide entered into an Urban Renewal Development Agreement with the Des Moines City Council, which provided Nationwide would receive $28 million in economic incentives to increase the size of the buildings. The agreement called for a minimum assessed value of $78.5 million for 1100 Locust Street and $36 million for 1200 Locust Street for a period of ten years.

The agreement, signed by Nationwide on August 27, 2007, stated:

> Nothing herein shall be deemed to waive Nationwide's rights under Iowa Code section 403.6(19) [2007], as amended, to contest that portion of any actual value assignment made by the Assessor in excess of the Minimum Actual Values established herein. In no event, however, shall Nationwide seek to reduce the actual value assigned below the Minimum Actual Values established herein during the term of the Agreement.

The building at 1100 Locust Street has seven stories with 798,696 square feet. It is a single-tenant, built-to-suit, owner-occupied building. Part of the building was built in 2002 and the remainder in 2006. It was remodeled between 2011 and 2016. The building contains office areas, conference rooms, a cafeteria, and a fitness center.

The building at 1200 Locust Street is a part five-story, part four-story building, with 371,920 square feet. This building is also single tenant, built to suit, and owner occupied. It was built in 2007 and remodeled between 2013 and 2015. The building contains office areas, conference rooms, and a dining area.

The minimum assessment agreement was in effect for the 2017 and 2018 tax years.[1] For those years, the Polk County Assessor increased the valuation of 1100 Locust Street from $80,230,000 to $87,050,000 and the valuation of 1200 Locust Street from $41,390,000 to $44,910,000. Nationwide contested the valuations. The Board determined the property was assessed at its fair market value and did not change the valuations of $87,050,000 and $44,910,000.

---

[1] During oral arguments before our court, Nationwide noted it also has appeals pending for the 2019 and 2021 assessments not subject to the minimum assessment agreement. Neither the 2019 nor 2021 assessment is included in the instant appeal.

On July 12, 2017, Nationwide appealed the Board's decision to the district court. It hired Thomas Scaletty, an appraiser for Mainland Valuation Services, in Lexena, Kansas. Scaletty considered three comparable sales in Des Moines and three outside of Des Moines but still in the Midwest. He made adjustments based on perceived differences in the properties. Using the comparable sales method, Scaletty found the value of 1100 Locust Street was $39,390,000 and 1200 Locust Street was $22,640,000. He testified, "I relied significantly on that sales comparison approach, because it specifically focuses on single-tenant buildings that were sold for continued single office use."

Based on the cost approach, Scaletty found the value of 1100 Locust Street, was $39,740,000 and 1200 Locust Street was $23,440,000; however, he gave no weight to the cost approach. Scaletty determined the value of 1100 Locust Street was $39,550,000 using the income approach, and the value of 1200 Locust Street was $24,240,000 using this method. He stated he gave less weight to the income approach than the comparable sales approach.

Nationwide also hired Don Vaske, an appraiser with Frandson & Associates in Des Moines. To determine fair market value, Vaske considered four comparable sales. He looked at two sales in the Des Moines area and two sales outside of Iowa. He adjusted the sales price for size and location, as well as market conditions. All the sales involved transactions of a fee simple interest. Using the comparable sales approach, Vaske valued 1100 Locust Street at $48,237,000 and 1200 Locust Street at $26,034,000.

Vaske used the cost approach to value 1100 Locust Street at $54,385,000 and 1200 Locust Street at $26,650,000. He used the income approach to value

1100 Locust Street at $47,117,000 and 1200 Locust Street at $25,134,000. Vaske testified:

> In the case of the subject, there's some functional and external obsolescence. All these factors weaken the reliability of the cost approach. The sales comparison approach relies on examples of comparable sales, and market participants, price points, and reaction to the property; in this case, a larger corporate home office.
>
> There are sales of larger corporate home offices. I analyzed two in Des Moines. You go to Midwestern communities, Kansas City, Minneapolis. There are examples of sales. The adjustments required to the sales as reasonable, I think the sales comparison approach deserves the most weight and is the most reliable in this case.
>
> The income approach is most accurate when properties are typically bought for their income-producing potential. This is an owner-occupied building; it was designed for a single occupant, that weakens the reliability of the income approach. I'd give the income approach less weight.

The Board also presented evidence from two appraisers. Mark Kenney was an appraiser with American Valuation Group, Inc., located in Lansdale, Pennsylvania. Kenney looked at six comparable sales in markets larger than Des Moines. He stated he gave the sales approach "the least amount of weight," because of the difference in the market size. He valued 1100 Locust Street at $107,000,000 using the sales approach and 1200 Locust Street at $63,000,000.

Kenney testified:

> I considered that they're national in the first place. I mean, ideal would have been another corporate headquarters right in downtown Des Moines.
>
> So once you start looking at all the different factors and some of them are sale leasebacks, and—I mean, I thought they were comparable compared to my highest and best use because I want to use continued occupancy, comparable to what we have.
>
> And yet with all the national exposure, national sales, I just felt that this approach wasn't as good, and I gave the most weight to the cost approach.

Kenney valued 1100 Locust Street at $80,000,000 and 1200 Locust Street at $55,000,000 using the income approach. Using the cost approach, he determined the value of 1100 Locust Street was $99,000,000 and the value of 1200 Locust Street was $41,000,000.

Russ Manternach is an appraiser with Commercial Appraisers of Iowa, Inc. Manternach used four comparable sales in Iowa—two in Des Moines, one in Cedar Rapids, and one in Johnston. Only one of the comparable sales was a fee simple sale. He looked at other sales, but found they did not involve buildings of a similar size and were not sufficiently comparable. Manternach looked at multi-tenant buildings as comparable sales, making adjustments to the sales price. For one comparable sale, he also made an adjustment because "all the leases were ending and there was more vacancy in the building." Manternach stated he looked at each sale and considered if he would give them weight, and if so, how much weight. He found that using the sales approach the value of 1100 Locust Street was $81,300,000 and the value of 1200 Locust Street was $42,800,000.

Using the income approach, Manternach valued 1100 Locust Street at $81,300,000 and 1200 Locust Street at $42,900,000. Using the cost approach, he valued 1100 Locust Street at $89,300,000 and 1200 Locust Street at $44,000,000. Manternach stated he gave equal weight to the sales and income approaches, finding the results were "fairly close together." He gave less weight to the cost approach "because of the amount of accrued depreciation."

The district court determined Nationwide produced two disinterested witnesses who indicated the market value of the property was less than the market value determined by the Board, and under Iowa Code section 441.21(3)(b) (2017),

the burden shifted to the Board to uphold the assessed value. The court did not make a finding that the fair market value of the property could not be readily established using the sales comparison approach but considered alternative means of determining the value of the property. The court found:

> Reviewing the testimony of each appraiser and their reports, the Court finds the reports of Kenney and Manternach to be more reliable than the reports of Vaske and Scaletty. In its analysis and review of the record and testimony before it, the Court gives more weight and consideration to the reports and testimony of Kenney and Manternach in its attempt to determine the value of the Property.

The court noted the replacement costs for insurance purposes of the properties were above the assessed values set by the Board. The court relied upon the cost approach and found the Board's appraisers provided competent evidence of the values for the two buildings. The court affirmed the valuation of 1100 Locust Street at $87,050,000 and 1200 Locust Street at $44,910,000. Nationwide now appeals.

## II.     Standard of Review

The Iowa Supreme Court has stated:

> Our review of a tax protest is de novo. *Boekeloo v. Bd. of Rev.*, 529 N.W.2d 275, 276 (Iowa 1995); *see also Dolphin Residential Coop., Inc. v. Iowa City Bd. of Rev.*, 863 N.W.2d 644, 647 (Iowa 2015) ("[A]ppeals from decisions of the local board of review are triable in equity . . . , and our review is de novo . . . ."). "[W]e give weight to the [district] court's findings of fact, [but] we are not bound by them." Iowa R. App. P. 6.904(3)(g); *Boekeloo*, 529 N.W.2d at 276. We are especially deferential to the court's assessment of the credibility of witnesses. *Boekeloo,* 529 N.W.2d at 276.

*Wellmark*, 875 N.W.2d at 672 (alterations in original).

## III.     Discussion

A tax payer may protest the assessed value of property to the county board of review. Iowa Code § 441.37(1); *Soifer v. Floyd Cnty. Bd. of Rev.*, 759 N.W.2d

775, 779 (Iowa 2009). Nationwide protested on the ground "the property is assessed for more than the value authorized by law." *See* Iowa Code § 441.37(1)(b).

Section 441.21(3)(b)(1) states:

> For assessment years beginning before January 1, 2018, the burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, inequitable, or capricious. However, in protest or appeal proceedings when the complainant offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed.

"The statute not only requires two disinterested witnesses, it also specifically requires the evidence offered by a disinterested witness to be competent before the burden of proof shifts to the board." *Compiano v. Bd. of Rev. of Polk Cnty.*, 771 N.W.2d 392, 398 (Iowa 2009). "Evidence is competent under the statute when it complies 'with the statutory scheme for property valuation for tax assessment purposes.'" *Id.* (quoting *Boekeloo*, 529 N.W.2d at 279).

Nationwide contends that it provided competent evidence from two disinterested witnesses, Scaletty and Vaske, to show the market value of the properties was less than the assessed value. The district court agreed with Nationwide, finding it presented the testimony of two disinterested witnesses to indicate the values of 1100 Locust and 1200 Locust were less than the current assessed values. The Board does not dispute this finding. We determine Nationwide met its burden to show the market value of the property was less than the Board's assessment. Under section 442.21(3)(b), the burden shifts to the Board to uphold the assessed value. *See Boekeloo*, 529 N.W.2d at 279.

The valuation of property for purposes of determining the appropriate amount of property tax is governed by section 441.21. "All property subject to taxation shall be valued at its actual value . . . ." Iowa Code § 441.21(1)(a). In general, "The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property . . . ." *Id.* § 441.21(1)(b)(1); *Soifer*, 759 N.W.2d at 778 (noting the actual value of property is its fair and reasonable market value).

> "Market value" is defined as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property.

Iowa Code § 441.21(1)(b)(1). Finding the fair market value of property through comparable sales is the "preferred method" of valuation.[2] *Wellmark*, 875 N.W.2d at 679; *Compiano*, 771 N.W.2d at 398 ("The legislative scheme for the valuation of real estate for purposes of assessing taxes begins with the market-value approach, based on 'comparable sales of other properties.'" (citation omitted)).

In "circumstances where the market value of taxable property [can] not be readily established," an assessor may use "an alternative approach to establishing actual value." *Wellmark*, 875 N.W.2d at 679. Section 441.21(2) provides:

> In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may determine the value of the property using the other uniform and recognized appraisal methods including its productive

---

[2] The consideration of sale prices is limited to "normal transactions reflecting market value." Iowa Code § 441.21(1)(b)(1). "[S]ale prices of property in abnormal transactions not reflecting market value shall not be taken into account or shall be adjusted to eliminate the effect of factors which distort market value." *Id.* Abnormal transactions may include sales to immediate family members, foreclosure sales, or contract sales. *Id.*

and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor.

The Iowa Supreme Court has stated:

"Other factors" may be considered *if, and only if,* market value cannot be readily established through the preferred market analysis. Once that threshold has been crossed, the assessor may consider a broad range of factors, but cannot rely solely on one such factor in determining "the fair and reasonable market value" of the property, or "actual value."

*Id.* (citing Iowa Code § 441.21(1)) (emphasis in original). The statute "mandate[s] that the assessor must first attempt to determine fair market value by using comparable sales." *Carlon Co. v. Bd. of Rev. of City of Clinton*, 572 N.W.2d 146, 149 (Iowa 1997). "The[ ] alternate means of valuation may be used only when market value cannot be readily established using a comparable sales approach." *Boekeloo*, 529 N.W.2d at 277.

Nationwide claims the Board failed to meet its burden because the Board's experts did not adequately follow the statutory scheme for property valuation. *See Compiano*, 771 N.W.2d at 398. Nationwide asserts the Board did not present competent evidence to uphold the valuation of 1100 Locust Street at $87,050,000 and 1200 Locust Street at $44,910,000 because the Board's experts, Kenney and Manternach, did not rely on comparable sales to determine the value of the properties. Nationwide states the fair market value of 1100 Locust and 1200 Locust can be determined through an analysis of the sales of comparable single-occupant buildings in Des Moines and similar markets. Nationwide asserts that the Board's experts should not have considered other factors because market

value can be readily established through the comparable sales approach. Nationwide also argues the district court erred in the application of burdens

"[T]he sales prices approach is initially to be used and . . . the other factors approach may be employed 'if and only if' [the] exchange value cannot thus be readily established." *Bartlett & Co. Grain v. Bd. of Rev. of City of Sioux City*, 253 N.W.2d 86, 88 (Iowa 1977) (quoting *Juhl v. Greene Cnty. Bd. of Rev.*, 188 N.W.2d 351, 353 (Iowa 1971)). The Iowa Court of Appeals recently stated, "The rule requires a fact-finder to first determine that the comparable-sales approach is unworkable before considering other factors." *Lowe's Home Centers, LLC v. Iowa Prop. Assessment Appeal Bd.*, No. 20-0764, 2021 WL 610105, at *3 (Iowa Ct. App. Feb. 17, 2021).

"[A] party relying on the other factors approach has the burden of persuading the fact finder that exchange value cannot be readily established by the sales prices approach." *Bartlett & Co. Grain*, 253 N.W.2d at 88; *see also Carlon Co.*, 572 N.W.2d at 150 ("[T]he party relying on the 'other factors' approach has the burden of persuading the fact finder that the fair market value of the property cannot be readily established by the comparable sales approach.").

While the district court noted, "the statute provides for alternative means of determining market value which should not be used unless the market value cannot be readily established using the Sales Comparison Approach," the court did not address whether the fair market value of the property could be readily established by looking at comparable sales. The court stated only that it found the appraisals by Kenney and Manternach were more reliable than the appraisals by

Scaletty and Vaske. The court did not analyze comparable sales and considered the value of the buildings using the cost approach.

On our de novo review, we find the Board's experts, Kenney and Manternach, did not present competent evidence of the value of 1100 Locust Street and 1200 Locust Street. Neither expert relied upon the sales approach to value the property. Kenney gave the sales approach "the least amount of weight." Manternach gave equal weight to the sales and income approaches. The Board's experts did not follow the statutory scheme for the valuation of property. *See Wellmark*, 875 N.W.2d at 679 (noting that the cost and income approaches should be used only if "market value cannot be readily established through the preferred market analysis"). And the expert testimony presented by the Board did not carry its burden to show the value could not be established by the sales price approach. *Barlett & Co. Grain*, 253 N.W.2d at 150. We conclude the Board did not meet its burden under section 442.21(3)(b) to uphold the assessed value. *See Boekeloo*, 529 N.W.2d at 279.

If the evidence is adequate to determine the value of the property, the court makes an "independent determination of the value" of the property. *Compiano*, 771 N.W.2d at 397; *see Kaplan v. Bd. of Rev. of City of Sioux City*, No. 03-0604, 2003 WL 23220013, at *3 (Iowa Ct. App. Nov. 26, 2003) (finding that when the Board failed to meet its burden to uphold an assessment, the court valued the property). We may determine the actual value of the property. *See R.S. Fox, L.L.L.P. v. Bd. of Rev. of Des Moines Cnty.*, 656 N.W.2d 809, 816 (Iowa Ct. App. 2002) (modifying the assessed value of property); *Hormel Foods Corp. v. Clark Cnty. Bd. of Rev.*, No. 00-148, 2001 WL 355593, at *8 (Iowa Ct. App. Apr. 11,

2001) (establishing the taxable value of property when the Board failed to justify its assessed valuations).

"[T]he assessed value or 'actual value' may not exceed the fair and reasonable market value." *Splash Enters., L.C. v. Polk Cnty. Bd. of Rev.*, No. 10-1887, 2011 WL 3925415, at *6 (Iowa Ct. App. Sept. 8, 2011) (citing Iowa Code § 441.21(1)(g)). Nationwide and the Board entered into a tax assessment agreement that provided there was a minimum valuation of $78.5 million for 1100 Locust Street and $36 million for 1200 Locust Street. The agreement stated, "In no event, however, shall Nationwide seek to reduce the actual value assigned below the Minimum Actual Values established herein during the term of this Agreement." The minimum tax assessment agreement was in effect for the period involved in Nationwide's protest here.

During oral arguments before this court, both sides requested we set the assessed value of the property, rather than remand.[3] We accept this invitation given the evidence contained in the record before us. We reverse the decision of the district court. We conclude the assessed value of 1100 Locust Street is $78.5 million and the value of 1200 Locust Street $36 million, as Nationwide agreed this is the minimum *actual* value of the properties. *See* Iowa Code § 441.21(1)(a) ("All property subject to taxation shall be valued at its *actual* value . . . ." (emphasis added)).

**REVERSED.**

---

[3] Nationwide urges this court to set the assessed value below the minimum assessment agreement. We decline to do so given the language of Iowa Code section 441.21 and the minimum assessment agreement.