Board of Tax and Land Appeals
No. 84-182

## APPEAL OF GREAT LAKES CONTAINER CORPORATION
### (New Hampshire Board of Tax and Land Appeals)

February 22, 1985

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Jeffrey H. Karlin* on the brief and orally), for Great Lakes Container Corporation.

*Engel & Morse P.A.*, of Exeter (*Mark S. Gearreald* on the brief and orally), for the Town of Kingston.

BROCK, J.   Pursuant to RSA 76:16, Great Lakes Container Corporation (GLCC) sought an abatement of property taxes assessed on land and buildings it owns in Kingston, for the 1982 tax year. The board of selectmen of Kingston denied the abatement, and GLCC appealed to the New Hampshire Board of Tax and Land Appeals (the board), under RSA 76:16-a (Supp. 1983).

The board upheld the denial of abatement, ruling that GLCC had failed to carry its burden of proving that the town's assessment of its property was unfair, improper, or disproportionately high. For the reasons that follow, we affirm.

Since around 1955, the land in question has been occupied by a barrel reconditioning plant. GLCC purchased the plant in 1976, and operated it from that year until 1980, when it was closed due to a lawsuit filed in the United States District Court by the federal, State, and local governments. The suit alleged, and it is conceded here, that the property is severely contaminated with hazardous waste materials. It was further alleged that most, if not all, of the waste was deposited in the soil as a result of the reconditioning plant's operations.

GLCC was named as a defendant in the suit, but it alleges that most of the contamination can be traced to GLCC's predecessor in title, International Minerals and Chemical Corporation (IMC). GLCC denied any liability under either federal or State law, arguing that IMC and other defendants in the suit (owners of neighboring land) should be held liable both for the costs of cleaning up the site and for any damage to other persons or property resulting from the contamination.

The suit was pending throughout the tax year in question, and is evidently still pending. GLCC, noting correctly that the value of property for assessment purposes is its sale value, *Trustees &c. Academy v. Exeter*, 92 N.H. 473, 481, 33 A.2d 665, 671 (1943), argued before the board that the existence of the lawsuit and the contaminants on the property rendered it unsaleable and thus untaxable. In support of this assertion, GLCC submitted an appraiser's report which concluded that traditional methods of appraising fair market value were inapplicable to the property, due to its then unusable condition and the pending federal litigation. The appraiser accordingly found the property to have a fair market value of zero.

GLCC conceded that the site would be cleaned up as a result of the federal litigation, and that this "probably" meant that the land would have sale value in the future. (In fact, such a cleanup is currently taking place, pursuant to court order.) GLCC also conceded that this was a factor in its decision to seek an abatement rather than to forfeit the land to the town. GLCC argued, nevertheless, that the land had no sale value during the 1982 tax year (which ran from April 1, 1982 to March 31, 1983) because any buyer "would be subject to being forced to pay $10,000,000 if they [the government] can't get the money from somebody else to clean it up . . . . [N]o person would come in and do that."

The board found this unpersuasive. It rejected the appraiser's report, and pointed to GLCC's refusal to forfeit the land as an indication that "there must be future benefit to the taxpayer after litigation determines liability for contamination and clean up." The board reasoned that this prospect of future benefit gave the property some sale value, even in 1982. Because GLCC had presented nothing to indicate what "the present value of that future benefit" might be, the board held that GLCC had failed to meet its burden of proof.

■■ "To show that an abatement is justified, the plaintiff must prove by a preponderance of the evidence that the assessment placed on its property was disproportionately higher in relation to its true value than as to other property in general in the taxing district." *Wise Shoe Co. v. Town of Exeter*, 119 N.H. 700, 701, 406 A.2d 720, 722 (1979). In this case, GLCC could meet this burden only if it first presented sufficient evidence to establish the true value of the land with reasonable certainty. *See id.* The board held that it had failed to do this, and we will overturn such a ruling only when it is erroneous as a matter of law. RSA 76:16-a, V (Supp. 1983).

■ There was no error in the board's rejection of the appraiser's conclusion that the land had no sale value. On this record, nothing prevented GLCC from agreeing to sell the land with transfer of title deferred until after completion of any court-mandated cleanup, thus freeing the buyer from any possible liability due to the contamination. It was therefore reasonable for the board to conclude that the property had some sale value.

Nor can we say that the assessed value of $224,150 was unreasonable on its face. GLCC had purchased the property from IMC in 1976 at a cost of $399,200.48, and had offered it for sale in 1981, *after* the federal court suit had been filed, at a price of $350,000. If GLCC had made a good faith attempt in 1982 to sell the property for less than its assessed value, and had received no response, the result in this case might be different; but no such attempt was made. There was no other evidence from which the board could have inferred a sale value below the assessed value. It was therefore reasonable for the board to conclude that GLCC had failed to meet its burden of proof.

■ GLCC argues that a remand is necessary because the basis for the board's decision is not clear in the record. *See Appeal of Harvey Road Assoc's*, 122 N.H. 24, 26, 440 A.2d 11, 12 (1982). We disagree. The decision was clearly based on the fact, conceded by GLCC, that the land could produce future benefits to a prospective buyer, and on GLCC's failure to produce evidence from which a rea-

sonably certain calculation of present value could be made. We accordingly hold that the abatement was properly denied.

*Affirmed.*

All concurred.