Reliable Electronic Finishing Co. *v.* Board of Assessors of Canton.

RELIABLE ELECTRONIC FINISHING CO., INC. *vs.* BOARD OF
ASSESSORS OF CANTON.

Suffolk. March 6, 1991. - June 10, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Taxation*, Real estate tax: abatement. *Real Property*, Environmental dam-
age. *Value. Evidence*, Value.

In a proceeding before the Appellate Tax Board in which a taxpayer, in
order to secure an abatement of the local real estate tax assessed
against property that had been contaminated during the taxpayer's
electroplating operations on the site, sought to demonstrate that the
cost of cleaning up the site, in accordance with the mandates of a cer-
tain consent judgment, had a substantial negative effect on the fair cash
value of the property, the board correctly denied the abatement where
the taxpayer failed to prove by credible evidence both the cost of re-
moving contamination and the effect of that cost on the fair market
value of its property. [382-383]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*David G. Saliba* for the plaintiff.

*Ellen M. Hutchinson* for the defendant.

WILKINS, J. Reliable Electronic Finishing Co., Inc. (tax-
payer), appeals from a decision of the Appellate Tax Board
(board) that denied to the taxpayer an abatement of the lo-
cal real estate tax assessed as of January 1, 1987, against
property that had been contaminated during the taxpayer's
electroplating operations on the site in Canton. The taxpayer
sought to demonstrate before the board that the cost of
cleaning up the site, in accordance with the mandates of a
February, 1984, consent judgment, had a substantial nega-
tive effect on the fair cash value of the property. The board
ruled that the taxpayer had failed to prove by credible evi-

dence both the cost of removing the contamination and the effect of that cost on the fair market value of its property. We transferred the taxpayer's appeal here. We affirm the board's decision.

There is no doubt that the taxpayer's property was contaminated when, sometime before 1984, chemical spillage occurred because a secondary containment system failed. The taxpayer presented no reliable evidence, however, on the cost of cleaning up the site. In 1984, Augat Inc., the taxpayer's parent, had estimated that the cost of corrective and cleanup work would be about $6,500,000. By the assessment date, the taxpayer had spent $1,600,000 in cleanup costs. The taxpayer presented no evidence, however, of the condition of the site or of the anticipated cost of cleaning up the contamination on January 1, 1987. There was no evidence of the level of contamination still on the site on January 1, 1987. The treasurer of Augat, an attorney, lacked any qualification to give an opinion on future costs of cleaning up the site. The taxpayer does not challenge the exclusion of proffered testimony from the treasurer as to the projected cost of the cleanup operation after January 1, 1987.

Even if the taxpayer had presented substantial evidence showing the anticipated cost of cleaning up the site, there was no evidence showing, as the board put it, "how the cost to cure a present defect would affect the value of the property to a potential buyer." The taxpayer did not meet its burden of proof. See *Schlaiker* v. *Assessors of Great Barrington*, 365 Mass. 243, 245 (1974). It presented no persuasive evidence that the assessors were wrong in their determination of value. See *Donlon* v. *Assessors of Holliston*, 389 Mass. 848, 855 (1983).

The board correctly noted that the law of the Commonwealth obliges it to recognize the effects of proven environmental damage on the fair cash value of property, whether or not the landowner was subject to court-mandated cleanup costs. See *Parkinson* v. *Assessors of Medfield*, 398 Mass. 112, 116 (1986) (conservation restriction); *Boston Edison Co.* v. *Assessors of Watertown*, 387 Mass. 298, 304 (1982) (governmentally-imposed restriction); *Coomey* v. *Assessors of Sandwich,* 367 Mass. 836, 837 (1975), and authorities

cited (statutory and constitutional duty to assess all real property at full and fair cash value); *Carr* v. *Assessors of Springfield*, 339 Mass. 89, 91-92 (1959) (same). The fact that a landowner negligently, recklessly, or even intentionally has caused environmental damage to its real estate, thereby reducing its fair market value, would not justify valuing that property for local tax purposes as if that damage had not occurred. See *Firestone Tire & Rubber Co.* v. *County of Monterey*, 223 Cal. App. 3d 382, 392-393 (1990); *Inmar Assocs., Inc.* v. *Borough of Carlstadt*, 112 N.J. 593, 600-601 (1988).

The taxpayer complains that the board did not follow these principles because it said in its decision that "[b]urdened by the legal responsibility of curing the results of its environmental misfeasance, the taxpayer seeks an interim abatement of its property tax liability, which would effectually transfer some of the financial burden of cleanup to the other taxpayers of Canton." The board's analysis is not correct literally. A reduction in the assessed value of the taxpayer's property would tend to shift some of the costs of the operation of the town of Canton from the taxpayer to other Canton taxpayers, but it would not transfer any cleanup costs to them. It is true, however, as the board presumably meant, that a lower assessed value of the taxpayer's property indirectly would have made funds available to pay for cleanup costs that otherwise the taxpayer would have paid to the town.

The board did not decide that, as a public policy matter, it could or should disregard the consequences of the contamination of the taxpayer's property. The taxpayer failed before the board not because the board applied an erroneous standard, but because the taxpayer did not prove the effect on fair cash value of the contamination that existed on the assessment date.

*Decision of the Appellate Tax
Board affirmed.*