Robert J. BOEKELOO and Vicki
J. Boekeloo, Husband and
Wife, Appellants,

v.

BOARD OF REVIEW OF the CITY OF CLINTON, Iowa; Kenneth Dunn, Chairman of the Board of Review of the City of Clinton, Iowa; Eugene Kaczinski, Donald Sorenson, and Tony Quartell, Appellees.

No. 93–1683.

Supreme Court of Iowa.

March 29, 1995.

J. Drew Chambers of Holleran, Shaw, Murphy & Stoutner, Clinton, for appellants.

Gary J. Rolfes of Mayer, Mayer, Lonergan & Rolfes, Clinton, for appellees.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

TERNUS, Justice.

This case presents the interesting and difficult issue of what effect environmental contamination has on the tax valuation of property. Property owned by Robert J. Boekeloo and Vicki J. Boekeloo, appellants, has groundwater contamination. The Clinton city assessor did not consider the existence of this contamination when he valued the Boekeloos' property. The appellees, Board of Review of the City of Clinton and its members, affirmed the tax valuation, as did the district court.

Although we believe the assessor should have considered the effect of the contamination on the value of the Boekeloos' property, we conclude that the Boekeloos did not carry their burden to prove the amount of any reduction in value caused by the contamination. *See Heritage Cablevision v. Board of Review*, 457 N.W.2d 594, 598 (Iowa 1990) (property owner must prove not only that assessment is excessive, but also the amount of the correct valuation). Therefore, we affirm.

### I. *Background Facts and Proceedings.*

The Boekeloos have owned the Liberty Tavern and the land on which it sits for twenty years. In 1988 the bank restructured the Boekeloos' business loan. As part of this restructuring, the bank required an environmental assessment of the property. This assessment revealed significant hydrocarbon contamination of the groundwater on the property. As of the date of trial no governmental agency had required the Boekeloos to remedy the contamination and the cost of cleanup was unknown.

The Boekeloos had listed the property for sale before they discovered the groundwater contamination. The property was on the market for six months but did not sell. Later, in 1992 the property was the subject of a tax sale after the Boekeloos failed to pay property taxes on the land. It was announced at the sale that the property had groundwater contamination. No one bid on the property. Sometime shortly before trial, the real estate agent with whom the Boekeloos had originally listed the property contacted them about a potential buyer. After the Boekeloos informed the agent of the groundwater contamination, the buyer was no longer interested.

The Clinton city assessor assessed this property at $235,220 as of January 1, 1992, using a cost approach. He was unaware of the groundwater contamination when he made his valuation.

The Boekeloos filed an objection with the board. They claimed that the city assessor assessed their property at more than the value authorized by law because its actual value was zero. The board refused to change the assessment. On appeal to the district court and after hearing evidence, the district court affirmed. The Boekeloos appealed.

■ Our review of this tax protest is de novo. *Metropolitan Jacobson Dev. Venture v. Board of Review*, 524 N.W.2d 189, 192 (Iowa 1994). Although we give weight to the trial court's findings of fact, we are not bound by them. Iowa R.App.P. 14(f)(7). We are especially deferential to the court's assessment of the credibility of witnesses. *Id.*

### II. *Applicable Statutory Law.*

To properly consider the valuation issue presented to us, we first review the statutory framework upon which our analysis must rest. All property subject to taxation must be "valued at its actual value." Iowa Code § 441.21(1)(a) (1993). The Boekeloos have asserted at every stage of this proceeding that the city assessor's valuation of their property was more than the actual value of the property. *See id.* § 441.37(1)(b) (authorizing appeal where property is assessed for more than the value authorized by law).

■ An appealing property owner has a twofold burden on appeal. *Heritage Cablevision*, 457 N.W.2d at 598. First, the property owner bears the burden to prove that an

assessment is excessive. *Id.;* Iowa Code § 441.21(3) (1993). Second, the appealing party "must establish what the correct valuation should be." *Heritage Cablevision,* 457 N.W.2d at 598; *accord Milroy v. Board of Review,* 226 N.W.2d 814, 818 (Iowa 1975). If the property owner "offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor," the burden of proof shifts to the board of review to uphold the assessed value. Iowa Code § 441.21(3) (1993).

The Iowa Code provides the following guidance on determining actual value:

> The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property except as otherwise provided in this section. *"Market value"* is defined as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property. Sale prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value....

*Id.* § 441.21(1)(b). We have interpreted this section to state a preference for establishing value using evidence of the sales price of the property being assessed or using evidence of comparable sales. *Heritage Cablevision,* 457 N.W.2d at 597.

Recognizing that it may not always be easy to ascertain what a willing buyer would pay and a willing seller would accept under a comparable sales approach, the statute provides for alternate means of determining market value:

> In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may determine the value of the property using the other uniform and recognized appraisal methods including its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor. The following shall not be taken into consideration: Special value or use value of the property to its present owner, and the good will or value of a business which uses the property as distinguished from the value of the property as property.

*Id.* § 441.21(2). These alternate means of valuation may be used only when market value cannot be readily established using a comparable sales approach. *Heritage Cablevision,* 457 N.W.2d at 597.

### III. *Evidence of Valuation at Hearing.*

■ Two real estate agents, Sheila Thompson and Stephen Howes, testified for the Boekeloos that property with groundwater contamination is virtually unsalable. However, the testimony of these witnesses suggested that the property could be sold if a potential buyer knew exactly how much it would cost to clean up the contamination. Because no one knows what the cleanup costs will be, Thompson and Howes testified that there would be no willing buyer for the property. They concluded, therefore, that the Boekeloos' property has no market value.

The city assessor testified that he valued the property by computing the replacement cost of the building and then depreciating that value. He based the land value on a footage price of $300. (Howes testified that property along Comanche Avenue, where the Liberty Tavern is located, is generally valued at a per foot price between $300 and $400.) The assessor valued the building at $183,770 and the land at $51,450 for a total tax valuation of $235,220.

Because of the contamination, the city assessor thought the willing seller/willing buyer approach to valuation could not be used. The city assessor believed a cost approach was the most appropriate valuation method. He testified there was not enough information available about the contamination and

cleanup costs to consider the impact of the groundwater contamination on the value.

Howes agreed that because of the contamination, a value based on a willing seller/willing buyer approach cannot be readily established. In fact, Howes testified that for the same reason the property's value could not be readily established under the income or cost methods either.

Mrs. Boekeloo testified that the contamination has not affected their business operations. She and the real estate agents agreed that the contamination is not visible and has no impact on the aesthetic appeal of the property.

### IV. *Impact of Contamination on Valuation.*

The Boekeloos argue that the contamination renders their property valueless; the city claims the contamination has no impact on the property's value. Under the circumstances of this case, we think both are wrong.

A. *Should the contamination on the property be considered?* Courts have only recently begun to deal with the impact of contamination on the valuation of property for tax assessment purposes. Those courts which have faced this issue have usually acknowledged that environmental contamination has an adverse effect on property values or have concluded that the assessor must at least consider the effect of contamination on the fair market value of the property. *E.g., Reliable Elec. Finishing Co. v. Board of Assessors,* 410 Mass. 381, 573 N.E.2d 959, 960 (1991); *Inmar Assocs., Inc. v. Borough of Carlstadt,* 112 N.J. 593, 549 A.2d 38, 41 (1988); *B.P. Oil Co. v. Board of Assessment,* 159 Pa.Cmwlth. 414, 633 A.2d 1241, 1243 (1993); *see Westling v. County of Mille Lacs,* 512 N.W.2d 863, 866 (Minn.1994).

Both common sense and the record made here convince us that these courts are correct. In the typical case, environmental contamination will have some adverse effect on the value of the contaminated property. Moreover, our assessment statute and prior case law require that the assessor consider any factor that may affect market value. *Bartlett & Co. Grain v. Board of Review,* 253 N.W.2d 86, 88 (Iowa 1977) ("the nature and condition of the subject property must of course be considered"); Iowa Code §§ 441.21(1)(b) (under willing seller/willing buyer standard, one must assume that each party is "familiar with all the facts relating to the particular property"), .21(2) (must consider "all other factors which would assist in determining the fair and reasonable market value of the property"). Therefore, we agree with the Boekeloos that the city assessor must consider the contamination of the groundwater under their property as a factor in his valuation of the property.

B. *Does the property have no value because of the contamination?* We are not convinced by the Boekeloos' proof that their property has no market value. Howes testified that the property could probably be sold if the potential buyer knew the costs of cleanup. Thompson said she would list the property if contracts had been signed for the cleanup. Thus, the Boekeloos' property is currently unmarketable because they have chosen not to obtain bids for removing the contamination, not because it is contaminated.

The Boekeloos' voluntary decision essentially to remove this property from the market by failing to ascertain cleanup costs cannot form the basis for assigning a nominal taxable value to the property. *See Inmar,* 549 A.2d at 43 ("the transitory absence of a market does not eliminate value"). This conclusion is particularly true where, as here, the Boekeloos continue to use the property for its intended purpose. *Milroy,* 226 N.W.2d at 816–17 (landowner's two disinterested witnesses testified that land had no value but they did not consider income generated by the property; we concluded that although this testimony was competent, it was completely lacking in credibility); *see* Peter J. Patchin, *Valuation of Contaminated Properties,* The Appraisal J. 7, 13 (January 1988) (the mere fact that a property is unmarketable does not mean it has no value, especially when it is being used for its intended purpose).

C. *Have the Boekeloos met their burden to prove the correct valuation of the property?* Having rejected the valuation asserted

by the Boekeloos, we must decide whether the record allows us to identify the correct valuation of their property. We are seriously hampered in doing so by the extreme positions taken by the parties. The record, reflecting the all-or-nothing approach of the board and the Boekeloos, contains no evidence from which an intermediate value can be computed. There is no valuation under traditional appraisal techniques which takes into account the fact that the property is contaminated. There is not even a hint of the potential costs of cleanup.

■ This lack of evidence brings us to the determinative question: who suffers from this failure of proof? As previously noted, the Boekeloos have the burden of proof unless the burden shifted to the board under section 441.21(3). The Boekeloos claim they met the requirements of section 441.21(3) because they introduced the testimony of two disinterested witnesses, Howes and Thompson. They argue that because Howes and Thompson testified that the market value of the Boekeloos' property was zero, the burden of proof shifted to the board to uphold the assessed value. The Boekeloos claim the board failed to do so because its only witness, the city assessor, refused to consider the impact of contamination at all in his assessment. In essence, the Boekeloos argue that if there is a failure of proof, their zero valuation should be adopted because the board failed to satisfy its alleged burden to prove that assessing the property at full value without consideration of the contamination was correct.

■ The problem with the Boekeloos' position is that it ignores the requirement of section 441.21(3) that the testimony of the disinterested witnesses must be "competent" before that testimony will shift the burden of proof to the board. We have interpreted this requirement of competence to mean that the testimony of the disinterested witnesses must comply with the statutory scheme for property valuation for tax assessment pur-

poses. *Ross v. Board of Review,* 417 N.W.2d 462, 464–65 (Iowa 1988); *see Bartlett & Co.,* 253 N.W.2d at 88.

As noted earlier, the Iowa assessment statute requires that the comparable sales approach be used. Iowa Code § 441.21(1) (1993). If that method of valuation is not available, the property must be assessed using other appraisal methods and other factors listed in section 441.21(2). *Id.* § 441.21(2). These other methods include the replacement cost approach and the income approach. *Heritage Cablevision,* 457 N.W.2d at 597. Other factors, many encompassed in the other appraisal techniques, include "productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist" in determining market value. Iowa Code § 441.21(2) (1993). Additionally, where other factors are used, the statute specifically prohibits reliance on only one factor. *Id.*[1]

In *Ross,* we held that the testimony of one of the taxpayer's witnesses was not competent because it did not comport with these requirements. *Ross,* 417 N.W.2d at 465. The witness there did not use the sales price method as the basis for his opinion on market value even though "adequate evidence of comparable sales was available to readily establish market value by that approach." *Id.* In *Bartlett,* we said that testimony by the taxpayer's witnesses on the value of the subject property under a sales price approach was "competent" only if the sales upon which they based their opinions were comparable. *Bartlett & Co.,* 253 N.W.2d at 88. Similarly, here the value testimony of the Boekeloos' witnesses must be consistent with the statutory scheme, i.e. competent, before that testimony will shift the burden of proof.

We conclude that the testimony of Thompson and Howes did not follow the requirements for assessment of real estate set out in section 441.21 for the following reasons.

---

1. This prohibition against reliance on one factor is not absolute as applied to appraisal techniques. Where the landowner shows that a particular method of valuation is unreliable, that party need not submit evidence of value under that appraisal method. *Post–Newsweek Cable, Inc. v. Board of Review,* 497 N.W.2d 810, 814 (Iowa 1993) (*citing Heritage Cablevision v. Board of Review,* 457 N.W.2d 594, 597–98 (Iowa 1990)).

Both witnesses based their opinions on one factor—the unavailability of a willing buyer. Although this factor is relevant to an analysis of value, reliance on it alone does not comport with the statutory scheme. Furthermore, although Howes testified that value could not be established under a willing seller/willing buyer standard, there was no evidence that this was due to the unavailability of comparable sales. Rather, the implication was that this standard could not be used because in the absence of known cleanup costs there would be no willing buyer. Finally, neither witness made any attempt to calculate value under the cost method or income method, even though Howes agreed that the simplest way to value this property would be to determine the replacement cost and then deduct cleanup costs.

We conclude that the testimony of Howes and Thompson that the property had no value was not "competent" as we have interpreted that term in section 441.21(3) because it did not follow the requirements of section 441.21. Therefore, the burden of proof remained on the Boekeloos to establish the correct value of their property.

We must hold upon this record that the Boekeloos have failed in their burden to establish what the correct valuation of their property should be. *Reliable Elec.*, 573 N.E.2d at 961 (refusal to abate property tax on contaminated property affirmed where taxpayer did not prove the effect the contamination had on the value of the property); *Appeal of Great Lakes Container Corp.*, 126 N.H. 167, 489 A.2d 134, 136 (1985) (assessed value not modified where property owner introduced no evidence of the true value of its contaminated property other than the rejected testimony of its expert that the property was unmarketable); *Inmar*, 549 A.2d at 46 (assessment not changed because court found the estimated cleanup costs in the absence of a cleanup plan "offered an unsatisfactory base for ... an adjustment"); *Vogelgesang v. CECOS Int'l, Inc.*, 85 Ohio App.3d 339, 619 N.E.2d 1072, 1079 (1993) (court held property owner did not carry its burden of proof to establish correct valuation where it introduced evidence of cleanup costs but no testimony of the effect these costs had

on the property's value). This result may seem harsh but the Boekeloos chose to take an all-or-nothing stance on value.

Because the Boekeloos failed to establish the correct value of their property, they did not carry their burden of proof. Therefore, we affirm the assessment adopted by the board.

**AFFIRMED.**