**IN THE COURT OF APPEALS OF IOWA**

No. 14-0093
Filed April 22, 2015

**WELLMARK, INC.,**
        Plaintiff-Appellee,

**vs.**

**POLK COUNTY BOARD OF REVIEW,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.


        Appeal from a property tax assessment. **AFFIRMED.**


        David W. Hibbard and Ralph E. Marasco Jr., Assistant County Attorneys, Des Moines, for appellant.

        Deborah M. Tharnish and Christopher E. James of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellee.


        Heard by Doyle, P.J., McDonald, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MCDONALD, J.**

This is an appeal from the 2011 property tax assessment valuation of Wellmark, Inc.'s corporate headquarters ("property"). We affirm the judgment of the district court.

I.

Wellmark completed construction of its corporate headquarters in the central business district of downtown Des Moines in 2010. The property occupies two city blocks plus the vacated street between those blocks, almost five acres in total. The building is five stories and is approximately 600,000 square feet, with approximately 90,000 square feet unfinished and unoccupied on the second floor. The gross area of each floor is approximately 120,000 square feet. The first floor contains a conference center and cafeteria; the remainder of the building is office space. Not at issue in this appeal is the valuation of an adjoining parking garage and exercise facility.

The county assessed the property at $99 million. Wellmark filed its petition to the board of review, asserting that the property was assessed for more than the value authorized by law. *See* Iowa Code § 441.37(1)(b) (2009). The board of review upheld the assessment, and Wellmark sought relief in the district court on the same statutory ground.

Four designated experts testified concerning the value of the property. Chris Jenkins and Ted Frandson testified for Wellmark; Peter Korpacz and Bernie Shaner testified for Polk County. Each of the four appraisers considered three valuation methods: the comparable sales approach, the cost approach, and

the income approach.  Each reconciled the three approaches to determine a final value of the property.  The valuations of the four appraisers are as follows:

|  | Shaner | Korpacz | Frandson | Jenkins |
|---|---|---|---|---|
| **Comparable Sales Approach** | $83,980,000 | $143,800,017 | $65,987,000 | $65,100,000 |
| **Income Approach** | $87,450,000 | $149,798,817 | $75,209,978 | $68,480,581 |
| **Cost Approach** | $122,970,000 | $149,798,812 | $73,123,000 | $71,100,000 |
| **Reconciliation** | $120,000,000 | $145,000,000 | $70,000,000 | $68,000,000 |

The district court found the actual value of the property to be $78 million.  The board of review timely filed this appeal.

II.

Our review of a tax protest is de novo.  *See Boekeloo v. Bd. of Review*, 529 N.W.2d 275, 276 (Iowa 1995).  Although we give weight to the district court's findings of fact, we are not bound by them.  *See* Iowa R. App. P. 6.904(3)(g).  We are especially deferential to the court's assessment of the credibility of witnesses.  *Id.*

III.

A.

We begin with background.  A taxpayer may protest a county's property tax assessment by filing a petition alleging one of the statutory grounds for appeal with the board of review.  *See* Iowa Code § 441.37.  The challenger may appeal the board of review's decision to the district court, which sits in equity to determine the assessment issues previously before the board.  *See* Iowa Code §§ 441.38–.39.  The appealing taxpayer bears the burden of proving by a

preponderance of the evidence that at least one statutory ground exists for its protest. *See Compiano v. Bd. of Review*, 771 N.W.2d 392, 397 (Iowa 2009). The appealing taxpayer can shift the burden to the board of review by offering competent evidence from at least two disinterested witnesses that the property's market value is less than the assessed amount. *See id.* at 396–97. If the district court determines at least one statutory ground has been established, it then makes an independent determination of value based on the evidence presented. *See id.* at 397; *see also Soifer v. Floyd Cnty. Bd. of Review*, 759 N.W.2d 775, 778–80 (Iowa 2009) (providing additional review of legal concepts governing property tax assessments and challenges).

On appeal, the board of review appears to argue the district court erred in relying on section 441.37(1)(a), which provides a statutory challenge to an assessment when the "assessment is not equitable as compared with assessments of other like property in the taxing district," a statutory challenge not asserted by Wellmark. We reject the argument out of hand. The argument is raised for the first time in the board of review's reply brief. "An issue cannot be asserted for the first time in a reply brief." *Polk Cnty. v. Davis*, 525 N.W.2d 434, 435 (Iowa Ct. App. 1994). In addition, although the district court did make a stray reference to equitable considerations in its findings, it is clear the district court resolved only the statutory valuation issue raised by Wellmark and applied the correct legal framework in so doing.

Here, Wellmark contends the valuation is in excess of that allowed by law. *See* Iowa Code § 441.37(1)(b). Our statutory charge in this appeal is to

determine the "actual value" of the property. *See* Iowa Code § 441.21(1)(a).

Actual value shall be:

> the fair and reasonable market value of such property except as otherwise provided in this section. "Market value" is defined as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property. Sale prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value.

*Id.* § 441.21(1)(b).

This Code section has been interpreted as expressing a preference for determining actual value by using a comparable sales approach. *See Boekeloo*, 529 N.W.2d at 277. "Recognizing that it may not always be easy to ascertain what a willing buyer would pay and a willing seller would accept under a comparable sales approach, the statute provides for alternate means of determining market value." *Id.* Specifically:

> In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may determine the value of the property using the other uniform and recognized appraisal methods including its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor.

Iowa Code § 441.21(2). "These alternate means of valuation may be used only when market value cannot be readily established using a comparable sales approach." *Boekeloo*, 529 N.W.2d at 277.

B.

We conclude the comparable sales approach cannot readily establish the market value of the property at issue. The comparable sales approach involves determining value by comparing the subject property with recently sold materially-similar properties. The issue of comparability has two components: the property used for comparison must be "comparable" and its sale must be a "normal transaction." *Soifer*, 759 N.W.2d at 782. With respect to the first component, a comparable sale should be similar, but need not be identical. *Sears, Roebuck & Co. v. Sieren*, 460 N.W.2d 887, 890 (Iowa Ct. App. 1990). "Similar means having a resemblance, and properties may be similar even though they have some different characteristics." *Id.* With respect to the second component, abnormal transactions not reflecting market value, such as foreclosures or other forced sales, contract sales, sales to immediate family, or discount purchase transactions, shall either be adjusted or not taken into account at all. *See* Iowa Code § 441.21(1)(b); *Homemakers Plaza, Inc. v. Polk Cnty. Bd. of Review*, No. 12-0634, 2013 WL 105220, at *5 (Iowa Ct. App. Jan. 9, 2013).

The difficulty in using the comparable sales approach in this case is the nature of this property—namely its size and configuration in a market of this size. In other words, there are not materially-similar properties to compare with the property at issue. Two of the appraisers explicitly recognized use of the comparable sales approach had limited value in this case. Jenkins used seven comparable sales. Two of the seven sales were from Iowa. Of his seven

comparables, Jenkins made the following adjustments to account for the nature of the property:

| Sale No. | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Adjustments | 59% | 46% | 61% | 76% | 84% | 78% | 179% |

Jenkins admitted these were "pretty large gross adjustments." Jenkins testified that as the amount of the adjustment increases, the reliability of the comparable sales as a method for determining value decreases. Jenkins thus gave the comparable sales approach less weight than other approaches. Shaner testified the comparable sales approach was not reliable in this case due to the limited number of comparable properties. Shaner testified his comparables were "crummy comps" that provided unreliable data for comparison purposes.

Frandson and Korpacz's comparable sales approaches suffered from related flaws. Frandson analyzed four comparable sales, all in the Des Moines area. He ultimately gave no weight to one of the comparable sales and made significant adjustments to the three other comparables. The district court found Frandson's analysis was unreliable because he considered only Des Moines area sales in a case that clearly called for outside market research. Korpacz, on the other hand, considered sales only outside of Iowa. Korpacz, however, failed to make the necessary adjustments for local market conditions. For example, Korpacz opined the value per square foot of the property was $250, which is significantly higher than any other property in Des Moines and over $100 per square foot higher than any other appraiser.[1] We conclude Korpacz's extreme,

---

[1] Shaner—$140.00 per square foot; Jenkins—$113.60 per square foot; Frandson—$110.00 per square foot.

inexplicable deviation from the range of value per square foot of the property renders his comparison approach unreliable.

A second reason why the comparable sales approach is unreliable here is there is essentially no market for a building of this size and configuration in this market. In arriving at market value, an appraiser must consider "the probable availability or unavailability of persons interested in purchasing the property." Iowa Code § 441.21(1)(b); *see Homemakers Plaza*, 2013 WL 105220, at *5. At the time of assessment, the Des Moines central business district, in which the property sits, was characterized as depressed with high vacancy. Part of the vacancy was caused by build-to-suit construction for large employers. For example, Korpacz assumed the most likely buyer of the property would be another corporation to use it as its own corporate headquarters despite his conclusion that 88% of corporations expanding to this market were building to suit. Of the seventeen comparables Korpacz examined, none were a sale from one corporate user to another corporate user despite his assertion that was the most likely buyer of this property. Jenkins also testified "[u]sers large enough to use this building are more inclined to build their own building to meet their own specific requirements." Shaner admitted there is not an active market for large office properties and "the property would be difficult to sell."

Because the subject property is an outlier in the market and because there is not reliable comparable sales data, its market value "cannot be readily established using a comparable sales approach." *Boekeloo*, 529 N.W.2d at 277.

We thus look to alternate methods to determine actual value. *See* Iowa Code § 441.21(2).

C.

In valuing the property at $78 million, the district court relied heavily on the income approach. The income approach is used to determine value based upon the property's expected ability to generate income for the owner, accounting for the property's estimated gross rents, vacancy rates, and anticipated operating expenses, calculated using a capitalization rate. The district court found 9% was an appropriate capitalization rate. Its finding was based on Frandson's use of 9% for a capitalization rate and Shaner's testimony that a capitalization rate of 9% could be considered the Midwest tertiary market rate in 2010 and the average capitalization rate of major U.S. markets in 2010. By applying this capitalization rate to Jenkins and Shaner's calculations, the district court found the income approach would establish a value of approximately $78 million.

The district court's determination of value using the income approach was supported by the evidence. Below are the valuations the appraisers assigned the property using the income approach:

|  | **Shaner** | **Korpacz** | **Frandson** | **Jenkins** |
|---|---|---|---|---|
| **Income Approach** | $87,450,000 | $149,798,817 | $75,209,978 | $68,480,581 |

We exclude Korpacz's valuation as an outlier. Further, Shaner's valuation failed to make any adjustment for the 90,000 square feet unfinished and unoccupied on the second floor of the property. The district court imputed an adjustment cost of

$6,000,000, which was consistent with the adjustment made by the three other appraisers.[2]  Shaner's adjusted income approach valuation is $81,450,000.

The district court's valuation using the income approach is validated by application of the cost approach.  The cost approach is based upon the principle of substitution, which means that no prudent buyer would pay more for a property than the cost of developing a new property.  The cost approach generally provides an accurate valuation when land value is readily determinable, when the property appraised is newer, when the property appraised does not suffer from significant accrued depreciation or obsolescence due to a building's inadequacy, and when the property appraised does not suffer super-adequacy, that is, the property has components not necessary to current or anticipated uses that add no value to the property.

The appraisers agreed the cost approach was at least somewhat reliable.  Shaner found the cost approach the most reliable due to the building being new and because "there are no good comparable sales and there are no good comparable rentals."  Korpacz found the cost approach "particularly useful" in this case because the building is new.  The appraisers all found the value of the land to be in a similar range.

| Appraiser | Shaner | Korpacz | Frandson | Jenkins |
|---|---|---|---|---|
| Land Value | $7,950,000 | $13,200,000 | $7,520,000 | $11,800,000 |

The appraisers each found the cost to replace the building to be within a similar range.

---

[2] Jenkins—$5,400,000; Frandson—$ 6,300,000; Korpacz—$6,169,983.

| Appraiser | Shaner | Korpacz | Frandson | Jenkins |
|---|---|---|---|---|
| Replacement Cost New | $167,178,305 | $171,282,835 | $164,006,260 | $151,913,000 |

The difference among the appraisers with respect to their final cost approach valuations related to the functional and economic obsolescence adjustments made to the property. The former term relates to diminution of value related to property characteristics, and the latter term relates to diminution of value due to external variables. The appraisers for Wellmark concluded the property, although new, suffered significant obsolescence. Frandson discounted the cost of replacement by 60% and Jenkins by 61%. The appraisers for the county opined the property had not suffered such severe obsolescence. Korpacz adjusted the cost of replacement by 13% and Shaner by 31%. Shaner, however, testified that some of his comparables showed obsolescence as high as 50-70%. The district court applied an obsolescence of 50% to Shaner's calculations. There was good reason for doing this—Shaner's cost approach valuation was dramatically higher than his valuations using the comparable sales and income approaches:

| Approach | Sales Comparison | Income (adjusted) | Cost | Reconciliation |
|---|---|---|---|---|
| Value | $83,980,000 | $81,450,000 | $122,970,000 | $120,000,000 |

As the district court noted, in order to validate an appraiser's analysis, the results of the three approaches to value should be relatively close. Adjusting Shaner's obsolescence percentage reconciles his valuation approaches.

On de novo review of the record, we agree with the findings of the district court, and we adopt them as our own. The actual value of the property cannot be readily established using the comparable sales approach due to the lack of

comparable sale information. The evidence supports a valuation of $78 million using the income approach. That valuation is supported by the cost approach when adjustments are made for the obsolescence of the property.

D.

Although it is not entirely clear, it appears the board of review argues Wellmark's appraisers' methodologies were flawed because the appraisers considered the property's special value to Wellmark as a corporate headquarters and because the appraisers failed to consider the present use of the property. Again, although it is not exactly clear, it appears the board of review argues the district court committed the same errors. The board of review is correct in asserting "[t]he assessor shall not consider the property's special value or use to the present owner." Iowa Code § 441.21(2). The board of review is also correct in asserting that an assessor must classify a property according to its present use and not according to its highest and best use. *See* Iowa Admin. Code r. 701–71.1(1); *Homemakers Plaza*, 2013 WL 105220, at *6. While the board of review has asserted the correct legal propositions, the board of review's argument is without merit.

The record belies the board of review's claim that the appraisers and the district court considered the special value of the building to Wellmark or a different use other than the present use of the property. Neither the appraisers nor the district court indicated they were discounting the value of the property due to any special value related to Wellmark. On repeated occasions, the district court notes the property shall be assessed according to its "present use" and not

its highest and best use, citing *Soifer*, 759 N.W.2d at 784.  The county assessed the property as commercial office space.  All four appraisers valued the property as commercial office space.   And the district court valued the property as commercial office space.  The property's current use is commercial office space.  From what we can gather, the board of review simply misses the mark.

E.

We address a final issue raised by the board of review.  Although the argument is not exactly clear, the board of review appears to argue the income approach used by Jenkins, Frandson, and Shaner improperly exempted from taxation a substantial amount of market value.  Specifically, the board of review appears to argue the income approach, including the income approach used by the board of review's own expert, fails to account for the value and quality of the improvements in the building, thereby amounting to an impermissible tax exemption.  This argument was not presented to the district court, and it is not preserved for our review.  *See Doe v. Roe*, No. 14-0490, 2015 WL 576060, at *2 (Iowa Ct. App. Feb. 11, 2015) (setting forth error preservation rules and rationale for the same).  Even if the issue had been preserved for our review, we conclude the issue is without merit.  The board does not identify the statute under which Wellmark claims an improper exemption.   The board does not identify the improvements allegedly not assessed.   Wellmark makes no claim for any statutory exemption.  The district court did not address any statutory exemption.

IV.

We have considered the parties' arguments, whether set forth explicitly herein. For the above-stated reasons, the judgment of the district court is affirmed. Wellmark moved to strike certain portions of the board's reply brief. The motion to strike is denied.

**AFFIRMED.**