# IN THE COURT OF APPEALS OF IOWA

No. 24-1964
Filed April 1, 2026

**Walmart, Inc. and Wal-Mart Real Estate Business Trust,**
Plaintiffs–Appellants,

v.

**Marshall County Board of Review a/k/a Board of Review of Marshall County,**
Defendant–Appellee.

Appeal from the Iowa District Court for Marshall County,
The Honorable Amy M. Moore, Judge.

**AFFIRMED**

Paul D. Burns and Olivia A. McGovern of Bradley & Riley PC, Iowa City,
attorneys for appellants.

Jamie L. Cox, Frank W. Pechacek, Jr., and Paul S. Wilson of Willson &
Pechacek, P.L.C., Council Bluffs, attorneys for appellee.

Considered without oral argument
by Ahlers, P.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J.

1

**CHICCHELLY, Judge.**

We filed our opinion in this appeal on February 11, 2026, but then granted the appellants' petition for rehearing. That opinion is vacated, *see* Iowa R. App. P. 6.1204(5)(c), and replaced by this one.

Walmart, Inc. and Wal-Mart Real Estate Business Trust (collectively "Walmart") appeal the district court's ruling upholding the Marshall County Board of Review's ("Board") 2023 property tax assessment. Walmart argues the district court erred when it (1) accepted an appraisal which assumed the store was leased when it was owner-occupied, and (2) found the Board's appraisal more credible than Walmart's. Upon our review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

The property subject to this appeal is Walmart's 24.7-acre site located at 2802 South Center Street, Marshalltown, on which sits a 214,323 square-foot Walmart store. The store was constructed in 1996, and a 6,006 square-foot "garden center" was added in 2002.

On January 1, 2023, the Marshall County Assessor imposed a $13,323,780 property tax assessment on the property. Walmart contested the assessment to the Board requesting a reduction in value to $8,332,680. The Board denied Walmart's request and upheld the Assessor's assessment. Walmart appealed to the district court.

At trial, both parties presented expert evidence regarding the appraisal of the property. Walmart presented testimony from Christopher Jenkins, and the Board presented testimony from Mark Kenney. The district court also received the report of an additional expert from Walmart, Peter Helland, but Helland did not testify. Kenney and Helland utilized the comparable sales,

income, and cost methods when calculating their value. Jenkins only utilized the comparable sales method. After considering all the evidence, the district court affirmed the Board's property tax assessment. Walmart now appeals.

## STANDARD OF REVIEW

We review an appeal of a tax protest de novo. *Wellmark, Inc. v. Polk Cnty. Bd. of Rev.*, 875 N.W.2d 667, 672 (Iowa 2016); *see also Dolphin Residential Coop., Inc. v. Iowa City Bd. of Rev.*, 863 N.W.2d 644, 647 (Iowa 2015) ("[A]ppeals from decisions of the local board of review are triable in equity . . . , and our review is de novo . . . ."). "[W]e give weight to the [district] court's findings of fact, [but] we are not bound by them." Iowa R. App. P. 6.904(3)(g); *Boekeloo v. Bd. of Rev.*, 529 N.W.2d 275, 276 (Iowa 1995). "We are especially deferential to the court's assessment of the credibility of witnesses." *Boekeloo*, 529 N.W.2d at 276.

## DISCUSSION

A taxpayer may challenge the assessed value of property. Iowa Code § 441.37(1) (2023); *Soifer v. Floyd Cnty. Bd. of Rev.*, 759 N.W.2d 775, 779 (Iowa 2009). Iowa Code section 441.21(3)(b)(2) states:

> For assessment years beginning on or after January 1, 2018, the burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, inequitable, or capricious. However, in protest or appeal proceedings when the complainant offers competent evidence that the market value of the property is different than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed.

Section 441.21(1)(a) provides that "[a]ll property subject to taxation shall be valued at its actual value." In general, "[t]he actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property." Iowa Code § 441.21(1)(b)(1); *accord Soifer*,

759 N.W.2d at 778 (noting the actual value of property is its "fair and reasonable market value").

The legislature has defined "market value" "as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property." Iowa Code § 441.21(1)(b)(1); *accord Nationwide Mut. Ins. Co. v. Polk Cnty. Bd. of Rev.*, 983 N.W.2d 37, 41 (Iowa 2022). Finding the fair market value of property through comparable sales is the "preferred method" of valuation. *See Wellmark*, 875 N.W.2d at 679; *Compiano v. Bd. of Rev.*, 771 N.W.2d 392, 398 (Iowa 2009) ("The legislative scheme for the valuation of real estate for purposes of assessing taxes begins with the market-value approach, based on 'comparable sales of other properties.'" (citation omitted)).

## I.     Appraisal Methodology

Walmart first argues the district court erred when it accepted the Board's appraisal (done by Kenney) because it valued the property as if it were leased when it is owner-occupied. A panel of our court previously addressed this argument from Walmart in another tax protest case. There, our court reasoned:

> Walmart argues Kenney's methodology is flawed because its store was owner-occupied and Kenney did not "remove the independent value these leases contributed to the sale prices" of the comparables. The Board responds that methodology is an appropriate way to value "the property as it was," unlike what it says is the "dark store theory of valuation" employed by Walmart's experts. . . . We don't need to get too far into the weeds on what looks like a hotly contested issue in the appraisal industry because neither section 441.21 nor case law prohibits the use of vacant or

> leased properties as comparables, so long as suitable adjustments are made to take the status of the property into account.

*Walmart, Inc. v. Dallas Cnty. Bd. of Rev.*, No. 21-1831, 2023 WL 2670039, at *4 (Iowa Ct. App. Mar. 29, 2023) (citations omitted).

So, we confine our review to whether Kenney made the necessary adjustments to his valuation. *See Walmart, Inc. v. City of Davenport Iowa Bd. of Rev.*, No. 21-1018, 2023 WL 1808504, at *6 (Iowa Ct. App. Feb. 8, 2023) ("Where the property is subject to a lease, an appraiser may make an adjustment to reflect the effect of the lease on the value of the property."). Walmart contends Kenney did not by pointing to instances during cross-examination where he acknowledged adjustments were not made. But on our de novo review, we find both Kenney's report and testimony indicate he did make the necessary adjustments.

When describing his methodology for finding comparable sales, Kenney testified to a series of adjustments he utilized:

> First we start with the ownership interest adjustment; financing adjustment, if it is required; conditions of sale adjustment and market conditions adjustment, as far as what we consider to be, what we call, transactional adjustments.
>
> Then we have other adjustments which would be more of a physical nature: Location; building size; age; condition; construction quality; access; visibil[i]ty; parking; economic characteristics; and building coverage ratio, which is kind of a land adjustment, land-to-building adjustment.

Kenney then discussed specific adjustments made in this case—as outlined in his report—including ownership interest and financing for each comparison property. And we find Kenney's report is replete with evidence of these adjustments. In one instance, the report states, "After the sales have been analyzed, they were adjusted for measurable differences." The

5

adjustments outlined in the report included: real property rights conveyed, financing terms, conditions of sale, market conditions, legal encumbrances, and other characteristics. The report expressly discusses the impact of a lease and the necessary adjustments for each comparison property. Immediately following, the report outlines the adjustment made to each comparison property in the report.

> So, we agree with the district court's summary of these adjustments:

> All eight properties were subject to leases; seven of the properties were also Walmart stores. Kenney determined that seven of the eight properties were leased below market rent and afforded upward adjustments in price per square foot ranging from 5% to 20% to account for this factor. One property was leased at market rent and Kenney did not apply any lease adjustment for this property. In addition to adjustments for leases, he also adjusted the price per square foot based upon other characteristics including location, building size, age/condition, parking, and economic characteristics.

And based on our de novo review, we conclude the district court did not err in accepting Kenney's valuations and adjustments. *See Walmart, Inc.*, 2023 WL 2670039, at *4–6.

## II. Expert Credibility

Next, Walmart argues the district court erred in finding Kenney more credible than their experts. The district court had a front row seat to the battle of the experts in this case. And both parties have attacked the methodology and credibility of the other's expert witnesses. But "the trial court is in a much better position to weigh the credibility of the witnesses than we are, and we will give weight to the trial court's decision on credibility even in a de novo review." *Excel Corp. v. Pottawattamie Cnty. Bd. of Rev.*, 492 N.W.2d 225, 229 (Iowa Ct. App. 1992).

We have already rejected Walmart's argument that using Kenney's expert valuation was erroneous. And the district court made well-reasoned credibility findings:

> [T]he court finds that Helland's and Jenkins' appraisals are considerably less reliable and credible. The majority of Helland's comparable sales were vacant at the time of sale. As previously noted, "neither section 441.21 nor case law prohibits the use of vacant or leased properties as comparables. . . " . . . However, an appraisal should not use only vacant properties. . . .
>
> Helland used a number of "abnormal" sales in his comparables. He also used several change-of-use sales without factoring this into his valuations. Helland's use of a high number of vacant sales, use of abnormal sales, and use of change-of-use sales as his comparable sales negatively impacts the court's assessment of his appraisal.
>
> Unlike Helland, Jenkins did not use any vacant sales or "change-of-use" sales. However, as previously noted, six of Jenkins' eight comparable sales involved abnormal or irregular sales. This significantly impacts the reliability of Jenkins' overall appraisal and valuation of the subject property per the sales approach. Overall, the court found that Helland and Jenkins both utilized less reliable comparable properties than the ones relied upon by Kenney, which renders their valuations less credible.
>
> After a thorough and thoughtful review of the experts' appraisals, and in considering their choices of comparable sales and the adjustments made, the court finds that Kenney's appraisal provides the more credible determination of the property's market value. The court further finds that Kenney's appraisal comports with the statutory parameters and is competent evidence of the subject property's value.

Based on our de novo review of the record and giving the proper deference to the district court's credibility findings, we find the district court did not err in finding Kenney's expert valuation to be the most credible.

## CONCLUSION

Based on our de novo review, we find the district court did not err in accepting the methodology of the Board's expert witness. And we find no error in the district court finding the Board's expert more credible than Walmart's experts. Accordingly, we affirm.

**AFFIRMED.**